Argued October 7, affirmed November 29, 1977

BULLOCK et al, *Respondents,*
*v.*
HASS, *Appellant.*
(No. 96466, SC 25068)
571 P2d 902

John A. McCormick, of Buss, Leichner & Barker, Portland, argued the cause and filed a brief for appellant.

Ronald D. Thom, Oregon City, argued the cause for respondents. With him on the brief was Jack S. Bernstein, West Linn.

Before Denecke, Chief Justice, Howell and Lent, Justices, and Gillette, Justice Pro Tempore.

HOWELL, J.

## HOWELL, J.

Plaintiffs filed this action for fraudulent misrepresentation and breach of an express warranty. The trial court, sitting without a jury, found for the plaintiffs on the theory of fraudulent misrepresentation and awarded them $4,000 general damages and $3,000 for loss of profits.

Plaintiffs were independent truckers who had formed a partnership in 1973 for the purpose of contracting their services to merchants needing goods transported. In June, 1974, the partnership needed another truck and contacted the defendant, also an independent trucker, who had a 1970 Peterbilt diesel truck tractor for sale. During the course of negotiations, the defendant represented to the plaintiffs that the truck had had an in-frame overhaul within the last 40,000 miles. After the purchase, the truck was used to haul flowers from San Carlos, California, to Seattle, Washington. In September, 1974, the truck broke down after it had been driven 24,000 miles. It was out of commission for six weeks, during which time it was given a new overhaul. Plaintiffs' theory at trial was that the representation made by defendant that the truck had had an in-frame overhaul was false. The trial court so found, and defendant appeals.

■ Defendant argues that there was no substantial evidence to support a finding that defendant misrepresented that the truck had had an in-frame overhaul. Defendant contends that he gave the truck such an overhaul. Without relating the evidence in detail, there was testimony that the truck did not receive an in-frame overhaul, that an engine will run for 250,000 to 400,000 miles after an overhaul, and that plaintiffs' truck broke down after 24,000 miles. The evidence was more than sufficient to support a finding that defendant did not perform an in-frame overhaul.

Defendant next argues that the evidence does not support a finding of $4,000 general damages. Apparently the defendant concedes that both parties agreed

that the measure of damages in this case would be the difference between the actual value of the truck at the time of purchase and the amount paid by plaintiffs.[1]

■ Plaintiffs sought damages in the amount of $5,000. The purchase price was $17,500. Plaintiff Virgil Bullock, an experienced truck operator, testified that if he had known the true facts he would have paid $12,500 for the truck. Moreover, there was evidence that it cost plaintiffs $7,000 to secure an in-frame overhaul after the truck broke down. The trial court awarded $4,000 as general damages. There was ample evidence to support an award of that amount as general damages.

Defendant also contends that the damages were calculated improperly. In support of his position that the award of $3,000 for loss of profits was inappropriate, the defendant argues that the proper measure of damage for loss of use of a commercial vehicle is the rental value, not loss of profits, and that even if loss of profits is a proper measure, such loss was not proved to a reasonable certainty in this case.[2]

■ Defendant's argument that plaintiffs are not entitled to loss of profits must fail for two reasons: (1) defendant did not object to plaintiffs' evidence regarding loss of profits, and (2) as recently as *Hardwick v. Dravo Equipment Co.,* 279 Or 619, 569 P2d 588 (1977), we held loss of profits to be a valid measure of damages for the loss of use of a commercial vehicle.

---

[1] Defendant's brief states: "As stated in that case [*Krause v. Eugene Dodge, Inc.,* 265 Or 486, 509 P2d 1199 (1973)], the measure of damages is properly defined as 'the difference between the actual value of the car at the time of purchase and the amount paid by plaintiffs as its purchase price.' That the trial court had adopted this view is clearly shown by the court's comments to counsel at trial. Furthermore, both counsel agreed as to that measure of damages as being proper in this case." (Defendant's brief p. 19).

[2] Defendant adds two supporting arguments in his brief: (1) that the plaintiffs should have mitigated their loss of profits by renting another truck for the San Carlos/Seattle run, and (2) that the six weeks taken to repair the truck was an excessive amount of time and therefore the defendant was not the cause of plaintiffs' loss of profits during the excess time used to repair the truck. Neither argument was raised in the trial court and we therefore decline to consider them.

We hold that loss of profits, if properly proved, is an acceptable measure of the loss of use of a commercial vehicle.

■ Defendant also argues that the amount of the loss of profits was not proved at trial to a reasonable certainty. While it is clearly necessary to prove lost profits to a reasonable certainty, *Hardwick v. Dravo Equipment Co., supra; Randles v. Nickum & Kelly S. & G. Co.,* 169 Or 284, 127 P2d 347 (1942), we believe that standard has been met here. Plaintiffs testified that, prior to its breakdown, the truck had been employed by the Wilsey, Bennett Co. to haul flowers from San Carlos to Seattle. Testimony was introduced by a witness with 30 years' experience as a trucker who was also a representative of a truck brokerage firm and owned his own trucking company showing that the truck would have made the 1700-mile trip twice a week for the six weeks it was being repaired and would have yielded a net profit of 18 cents a mile.[3] The defendant produced no contradictory evidence. The loss of profits was proved to a reasonable certainty.

Affirmed.

---

[3] Two round trips from San Carlos to Seattle amount to 3384 miles per week. Plaintiffs would have driven a total of 20,304 miles in the six-week period. At 18 cents per mile, plaintiffs' loss of profits would be $3,654.72.